**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FRANK S. WALKER,<br><br>           Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, COMMISIONER OF SOCIAL SECURITY<br><br>           Defendant. | Case No. 13-cv-05037-BLF<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 35, 40] |

Plaintiff Frank S. Walker, proceeding *pro se*, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the decision by an Administrative Law Judge ("ALJ") that he is not eligible for a waiver of the Social Security Administration's ("SSA") recovery of overpaid disability insurance benefits. Before the Court are Plaintiff and Defendant Commissioner of Social Security's respective motions for summary judgment.[1] Pl.'s MSJ, ECF 35; Def.'s MSJ, ECF 40. Having carefully considered all of the parties' papers, the administrative record, and the relevant legal authority, the Court hereby DENIES Plaintiff's motion, GRANTS Defendant's motion, and AFFIRMS the decision of the Administrative Law Judge ("ALJ").

**I.   BACKGROUND**

Plaintiff began receiving social security disability insurance benefits on October 1, 1999. Administrative Record ("AR") 12. On January 10, 2002, an ALJ found that Plaintiff had been

---

[1] Plaintiff filed a number of other papers both before and after the briefing on the instant motions for summary judgment. *See* ECF 31, 32, 46, 48, 49, 51, 55, 57, 59, 60, 62, 66, 68, 70, 72, 74, 76, 78. These papers are difficult to decipher, largely redundant, and, when construed liberally, appear to raise issues that are not germane to this action. In light of Plaintiff's *pro se* status, the Court has reviewed all of Plaintiff's filings and addresses them here to the extent that they relate to the issues to be decided in the motions before the Court.

under a qualifying disability since April 19, 1999 and awarded past-due benefits amounting to $27,024.00. Pl.'s Req. for Judicial Notice ("RJN") Exh. 1, ECF 14;[2] *see also* AR 521. The ALJ subsequently determined in June of 2002 that Plaintiff was no longer capable of managing his own benefits and assigned a "representative payee" to receive his payments. AR 39, 521. After Plaintiff received a lump sum of $12,196.00 on August 2, 2002, he filed a federal lawsuit against the SSA alleging that he had not received the payments to which he was entitled and taking umbrage at the "illegal" assignment of a representative payee whose receipt of Plaintiff's benefits caused him injury. *See Walker v. Barnhart*, No. 02-03868-RMW (filed Aug. 12, 2012). The district court ultimately ruled in the SSA's favor, concluding that Plaintiff had failed to establish that he was entitled to benefits that had not been paid and that he could not seek compensatory damages for alleged injury caused by delayed benefits. AR 521-24. Plaintiff appealed the ruling to the Court of Appeals for the Ninth Circuit, which summarily affirmed the district court's ruling on November 24, 2004. AR 550-51. Plaintiff then petitioned for a writ of certiorari to the United States Supreme Court, which was denied on March 21, 2005. AR 161. Nevertheless, Plaintiff continued to correspond with the Supreme Court through 2006 and early 2007. AR 160-416.

During the foregoing time period, Plaintiff continued to qualify for and receive social security disability benefits. The facts relevant to this case begin in 2005, when Plaintiff was granted a "trial work period" from September 2005 to May 2006 to test his ability to return to work.[3] AR 14, 771. Plaintiff continued to receive benefits during this time and up until May

---

[2] The Court construes Plaintiff's "Affidavit in Support of Motion and Motion for 30 Days Extension and Entery [sic] Plaintiffs Telephoned Requested Defendant that Attached Evidence Must Appear in Court Records," ECF 14, as a request for judicial notice of the January 10, 2002 ruling of the ALJ attached as Exhibit 1. The Court GRANTS this request and takes notice of the ruling, as the fact of its occurrence is not subject to reasonable dispute. Fed. R. Evid. 201(b). Although not directly relevant to any issues in this action, the prior ALJ's ruling is helpful background to understanding Plaintiff's convoluted assertions in this case.

[3] A "trial work period" is a nine month period in which a disabled claimant is permitted to test his ability to work while still being considered disabled. 20 C.F.R. § 404.1592. The claimant continues to receive benefits, and work performed during this time is not used to show that a disability has ended. The trial work period ends with the ninth month in which a claimant has worked (the nine months are not necessarily consecutive), and the disability is considered to have ceased the first time a claimant engages in "substantial gainful activity" after the termination of the trial work period. *Id.* § 404.1592a(a)(1). Once the agency determines that a claimant's disability has ceased, the claimant is paid benefits for three more months and enters an extended

2010. In 2010, the SSA obtained Plaintiff's earnings information suggesting that he had been earning income at levels constituting "substantial gainful activity" ("SGA") on and off from June 2006 through April 2009, and that he continued to receive and accept benefits after his eligibility ended in May 2009.[4] AR 14, 29-38. As such, Plaintiff erroneously received benefits for months in which he earned SGA and from May 2009 to May 2010, when the SSA finally cut off payments. *Id.* The SSA notified Plaintiff of this determination on May 3 and May 5, 2010, along with its conclusion that Plaintiff had been overpaid $55,627.00 in disability benefits from June 2006 to May 2010. *Id.* Plaintiff sought a waiver of repayment of the overpaid benefits in June 2010 by way of a letter to the Commissioner titled "Reconsideration and Waiver Motion." AR 778-784. The SSA notified Plaintiff on September 30, 2010 that he did not qualify for a waiver of recovery and provided him with an opportunity to review his file at a personal conference scheduled for October 15, 2010. AR 25-26. Plaintiff declined to appear in person at the conference, and the SSA affirmed the decision to deny Plaintiff's request for waiver in October 2010. AR 809-12.

Plaintiff sought ALJ review of the SSA's determination and appeared without representation at a hearing held on August 11, 2011. AR 813-16, 1268-99. During the hearing, the ALJ questioned Plaintiff about his background, his earnings from 2006 through 2009, and his efforts to notify the SSA about changes in his employment. *Id.* The ALJ provided Plaintiff an opportunity to supplement the record within two weeks of the hearing by submitting tax returns showing his earnings from 2006 to 2009. The ALJ on November 15, 2011 affirmed the denial of waiver of recovery, finding that Plaintiff was at fault in causing the overpayment of benefits. AR 12-16. Specifically, the ALJ found: (1) that Plaintiff was overpaid benefits in the amount of

---

period of eligibility ("EPE") of 36 months, during which he can receive a benefit for any month in which he does not earn SGA. *Id.* § 404.1592a(a)(2)(i), (ii). Plaintiff's trial work period ended in May 2006, and his EPE lasted from June 2006 through May 2009. AR 14, 770.

[4] "Substantial gainful activity" is the performance of significant physical or mental activities for pay or profit. 20 C.F.R. § 404.1572. There is a presumption of SGA if a claimant's monthly earnings exceed a minimum amount set by statutory guidelines. 20 C.F.R. §§ 404.1574(b)(2), 404.1575(b)(2); *see also Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990). Here, the SSA's determination of overpayment was based on the presumption of SGA raised by Plaintiff's monthly earnings exceeding the minimum statutory guidelines. *See* Def.'s Mot. 5-6.

3

$55,627 during the period September 1, 2006 to May 1, 2010; (2) that Plaintiff was at fault in causing the overpayment; and (3) that recovery of the overpayment is not waived, and that Plaintiff is liable for repayment of the entire amount. *Id.* The ALJ further found that Plaintiff's testimony that he regularly notified the SSA by telephone regarding his employment during the overpayment period was not credible due to the absence of any record of those conversations. AR 15-16. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 16, 2013, and this appeal followed. AR 5-11; Compl., ECF 1. Plaintiff now seeks summary judgment overturning the ruling of the ALJ, and Defendant seeks summary judgment affirming the ALJ's decision. Pl.'s Mot., ECF 35; Def.'s Mot., ECF 40; Pl.'s Reply, ECF 41.

## II.     LEGAL STANDARD

A district court reviewing a determination by the Commissioner of Social Security has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). This review is limited, and a final administrative decision should "only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotations and citations omitted). "Substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, consisting of "more than a mere scintilla but less than a preponderance." *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990); *see also Burch*, 400 F.3d at 679.

A reviewing court must consider the entire record as a whole, including evidence that both supports and detracts from the ALJ's decision. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). Of particular note, credibility assessments are often necessary because "in determining whether a claimant has spent or retained excess resources, an ALJ must be free to disregard self-serving statements that cannot be verified." *Hudson v. Bowen*, 849 F.2d 433, 434 (9th Cir. 1988). Where a credibility determination is a "critical factor" in the ALJ's decision, the ALJ must make an "explicit credibility finding" that is "supported by a specific, cogent reason for the disbelief." *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). A credibility finding so supported must be given "great weight." *Id.*; *Hudson*, 849 F.2d at 434. An ALJ's ruling will furthermore not be

4

reversed for errors that are harmless and "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) and *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## III. DISCUSSION

Plaintiff appeals the ALJ's determination that he was overpaid $55,627.80 in benefits from September 1, 2006 to May 1, 2010 and that he is not eligible for a waiver of the SSA's recovery of that overpaid amount. *See* Compl.; Pl.'s Mot. ¶ 71.

The SSA is required by statute to recover overpaid benefits. 42 U.S.C. § 404(a). The implementing regulations set forth detailed and comprehensive procedures that the SSA follows in notifying an overpaid individual about the determination and in recovering the overpaid amount. *See* 20 C.F.R. §§ 404.502 *et seq.* Overpaid individuals are notified of their right to request reconsideration of the determination of overpayment or to seek a waiver of recovery of the overpaid amount. *Id.* § 404.502a. The agency shall, in statutorily circumscribed instances, waive recovery from "any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404(b). The agency's regulations interpret these requirements in the conjunctive; that is, a claimant must (1) be without fault *and* (2) demonstrate that recovery would either defeat the purpose of the Act or be against equity and good conscience. 20 C.F.R. § 404.506(c).

### A. Substantial Evidence Supports the ALJ's Finding that Plaintiff Was Overpaid Benefits During the Period September 1, 2006 to May 1, 2010

As a preliminary matter, the Court observes that it is not clear whether Plaintiff is challenging this finding by the ALJ. At points in his filings before this Court, Plaintiff refers to "voluntary" work he performed at Foothill College and suggests that this work was for free. *See* Pl.'s Mot. ¶¶ 32, 44-47. In his reply, Plaintiff appears to also challenge the monthly earning levels that the SSA uses to determine whether an individual has presumptively engaged in SGA. Pl.'s Reply ¶¶ 47-51. Construed liberally, this may be a challenge to the SSA's determination that

Plaintiff was overpaid benefits because he earned levels constituting SGA during the relevant time period.[5] Defendant contends that the only question in this appeal is whether the ALJ properly determined that Plaintiff was at fault. Def.'s Mot. 2. Moreover, the ALJ found that Plaintiff "did not dispute the amount of the overpayment but rather SSA's finding that he is at fault." AR 15.

Even if Plaintiff is now challenging the determination of overpayment, substantial evidence supports the ALJ's conclusion that Plaintiff was overpaid. The SSA provided, and the ALJ considered, a "detailed and comprehensive explanation of the overpayment and how it was calculated," including a clear identification of the months in which Plaintiff worked, whom he worked for, how the SSA calculated his monthly earning to arrive at the conclusion that he engaged in substantial work, and the amount in benefits that he was paid during that time. AR 14, 29-38, 762-71, 803-08. Plaintiff indicated by phone that he did not wish to appear in person for his personal conference and did not dispute the amount of overpayment, instead submitting documents regarding a lawsuit filed against the SSA. AR 15, 809. The ALJ reviewed Plaintiff's evidence and determined that it was not relevant at all to the overpayment. AR 15.

The ALJ also questioned Plaintiff during the hearing regarding his earnings for the period in which he received overpaid benefits and afforded him an opportunity to supplement the record with his tax returns for those years. AR 1279-80, 1291, 1296-98. Plaintiff could not answer any of the ALJ's questions directly and supplied only a 2010 tax return. AR 15. Plaintiff has likewise not submitted any evidence to this Court documenting the amount that he earned during the relevant time period. Given the lack of any evidence in the administrative record or from Plaintiff tending to show that the SSA's determination of overpayment was incorrect, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff was overpaid benefits in the amount of $55,627.80 during the period September 1, 2006 to May 1, 2010.[6]

---

[5] The Court also notes that Plaintiff's original correspondence to the SSA after being notified of the overpayment was titled "*Reconsideration* and Waiver Motion," though the gravamen of the document appeared primarily concerned with waiver and with Plaintiff's prior federal lawsuit. AR 778-784 (emphasis added).

[6] The Court is cognizant that the SSA has already recovered a portion of this amount through the Treasury Offset Program and that, as of August 29, 2014, Plaintiff owes $51,063.80. Def.'s Resp. to Court's Order at 2, ECF 59.

### B. Substantial Evidence Supports the ALJ's Conclusion that Plaintiff is Not Eligible for a Waiver of Overpayment Recovery

The principle question with respect to Plaintiff's eligibility for waiver of recovery is whether the ALJ properly determined that Plaintiff was at fault in causing the overpayment of benefits such that he is not statutorily qualified for a waiver. Fault applies only to the individual, and not to the SSA even if the agency may also be at fault in making the overpayment. 20 C.F.R. § 404.507. An assessment of fault "requires consideration of 'all pertinent circumstances,' including 'age, intelligence, education, and physical and mental condition'" and is accordingly "highly subjective, highly individualized, and highly dependent on the interaction between the intentions and state of mind of the claimant and the peculiar circumstances of his situation." *Albalos v. Sullivan*, 907 F.2d 871, 873 (9th Cir. 1990) (quoting *Elliott v. Weinberger*, 564 F.2d 1219, 1233 (9th Cir. 1977), *aff'd in part and rev'd in part sub nom. Califano v. Yamasaki*, 442 U.S. 682 (1979)). An overpaid individual may be found at fault if the overpayment resulted from: "(1) an incorrect statement made by the individual that he knew or should have known to be incorrect; (2) failure to furnish information that he knew or should have known to be material; or (3) acceptance of a payment that he either knew or could have been expected to know was incorrect." *McCarthy v. Apfel*, 221 F.3d 1119, 1126 (9th Cir. 2000) (citing 20 C.F.R. § 404.507). The overpaid individual bears the burden of proving that he was without fault. *Albalos*, 907 F.2d at 873 (citing *Anderson v. Sullivan*, 914 F.2d 1121, 1122 (9th Cir.1990)).

The ALJ found that Plaintiff was at fault in two ways: Plaintiff failed to furnish information regarding his earnings to the SSA during the relevant time period, and Plaintiff accepted benefit checks to which he knew or should have known he was not entitled. AR 15-16. Defendant contends that substantial evidence supports these determinations. Def.'s Mot. 6-8. The Court agrees.

#### i. Plaintiff Failed to Furnish Material Information to the SSA

At the administrative hearing, Plaintiff testified that he informed the SSA about his

increased earnings by making monthly calls to a 1-800 number.[7] *See* AR 822, 1280-87. However, he was unable to identify specifically when he made those calls and with whom he spoke, and he produced no evidence to corroborate his testimony. The ALJ thus found that Plaintiff's testimony was not credible because there was no record of the phone calls that he claims to have made to the SSA's 1-800 number. AR 16. Plaintiff's own testimony being the only evidence of notice to the SSA, his credibility was a critical factor to the ALJ's ruling. The ALJ's determination that Plaintiff lacked credibility was supported by specific, cogent reasons for the disbelief and, as such, entitled to great weight. *See id.*

Plaintiff's numerous filings in this action indicate that he believes he also satisfied his obligation to notify the SSA by providing "constructive notice" that he was looking for employment in 2005 and 2006. *See, e.g.*, Pl.'s Mot. ¶¶ 16, 22, 28; Pl.'s Reply ¶ 46; ECF 46 ¶ 52 ("The principal issue is wheter [sic] plaintiff did advised '4-12-2005 letter advised' constitute constructive notice to defendants group SSA and their attorneys and OHA fail to modify his decision and up today July 14, 2014 wheter [sic] plaintiff has met all constructive notices and is not at fault today").[8] Plaintiff's repeated reference to an April 12, 2005 letter and to the Administrative Record at 987, 1031-32, and 1179-80 suggests that Plaintiff is arguing that the SSA had constructive notice of his change in earnings through filings that Plaintiff made to the United States Supreme Court regarding his prior federal lawsuit, which filings were served on then-Solicitor General Paul Clement. *See, e.g.*, Pl.'s Mot. ¶¶ 28-30 (referring to Exh. L, which is a copy of the April 12, 2005 letter available at AR 987-89, and of a 2006 filing at AR 1031-32).

The ALJ considered these documents but rejected them as "not relevant at all to the claimant's overpayment." AR 15. This Court agrees. As Defendants correctly note, the missives that Plaintiff sent to the Supreme Court do not reflect notice of the fact of his return to work, only notice of various perceived injuries in connection with Plaintiff's prior federal lawsuit. Def.'s Mot. 5. Construed as liberally as possible, the April 12, 2005 letter at best indicates that Plaintiff

---

[7] Plaintiff indicates that he called "Carolyn L. Simmons" or "Caroline Simpson," the commissioner of Social Security for his district at that time. *See* AR 822, 1286.

[8] *See also* ECF 57 ¶ 21; ECF 62 ¶¶ 14-25; ECF 68 ¶ 30; ECF 70 ¶ 23; ECF 76 ¶ 9; ECF 78 ¶ 24.

was looking for employment in 2005 and does not suffice to discharge Plaintiff's obligation to notify the SSA of his actual employment in 2006 and beyond. *See* Pl.'s Mot. ¶ 30 (quoting April 12, 2005 letter stating "I am irreparably harmed, by your past due bills, and lower my Fico Score, Nor Exit Plan to Recover or to get a Reasonable Employment before Federal Bank raise Percentage of Interest Rate in May-13-2005," AR 987). More fundamentally, Plaintiff has identified no authority—nor is the Court aware of any—stating that a social security claimant can "constructively" notify the SSA of a material change in his eligibility through a court filing or letter to the Solicitor General.

The Court accordingly rejects Plaintiff's constructive notice theory and finds that substantial evidence supports the ALJ's determination that Plaintiff was aware of his reporting obligation but failed to furnish material information to the SSA regarding his employment from 2006 through 2009.

### ii. Plaintiff Accepted Benefit Checks to Which He Was Not Entitled

The ALJ further found that even if Plaintiff credibly demonstrated that he reported his work to the SSA, he "knew or should have known, that [he] would not be entitled to benefits given his level of earnings." AR 16. When questioned by the ALJ, Plaintiff admitted that he understood he was not entitled to benefits but that he cashed the checks because he had a "$68,000 American bill" as well as expenses relating to medication and surgery. AR 1288. Plaintiff further testified that he asked the SSA and "they didn't also object at the time." *Id.*

The ALJ also considered whether any other circumstances, such as age, intelligence, or physical, mental, educational, or linguistic ability affected Plaintiff's ability to understand the reporting requirements and the obligation to return checks that were not due to him. The ALJ noted Plaintiff's steady employment, his work as a real estate and finance consultant, and concluded that there was "no evidence in the record that would support a finding that the claimant did not, or should not have, understood the rules and regulations relating to receiving benefits while working." AR 16. Although Plaintiff disputes that he was ever a real estate consultant, Pl.'s Reply ¶ 82, he does not appear to challenge the finding that he understood his reporting obligation and that he knew he was not entitled to the benefit checks he received from 2006 to 2010.

9

1    Plaintiff's continued acceptance of those checks despite his awareness that he was no longer due

2    benefits thus further supports the ALJ's conclusion that Plaintiff was at fault in causing the

3    overpayment of benefits.

4      The Court accordingly finds that substantial evidence supports the ALJ's determination

5    that Plaintiff does not qualify for a waiver of recovery of overpaid benefits because he was at fault

6    in causing those overpayments.[9] As such, the Court GRANTS Defendant's Motion for Summary

7    Judgment and AFFIRMS the ruling of the ALJ. *See Manitsas v. Astrue,* No. C 11-2691, 2012 WL

8    2503267, at *5 (N.D. Cal. June 28, 2012) *aff'd sub nom. Manitsas v. Colvin*, 565 F. App'x 652

9    (9th Cir. 2014) (affirming denial of waiver of overpayment on similar facts).

10     **C. Plaintiff's Other Claims**

11     Plaintiff's Motion for Summary Judgment and his other filings before this Court raised a

12   number of other issues that are not germane to the appeal of the ALJ's ruling. In view of

13   Plaintiff's *pro se* status, the Court addresses his other claims here only to the extent that a request

14   for relief can be construed from the papers.

15     Plaintiff appears to be seeking reimbursement of $68,000 in "tuitions fees, cost, books for

16   3 years" of vocational training at Foothill College." Pl.'s Mot. ¶ 70; ECF 55 ¶ 16. It is not clear

17   why the SSA would be liable to Plaintiff for this amount of money and Plaintiff has not submitted

18   evidence in support of that claim. As such, Plaintiff's request for reimbursement is DENIED.

19     Plaintiff appears to contend that the SSA was negligent in overpaying benefits and in

20   recovering the overpaid benefits. *See, e.g.*, Pl.'s Mot. ¶¶ 26, 48, 57-59. Plaintiff particularly

21   contends that the SSA's interception of his federal income tax refunds through the Treasury Offset

22   Program caused him injury. *See, e.g.*, ECF 62 ¶ 40; ECF 68 ¶¶ 14-19; ECF 78 ¶¶ 5, 11. To the

23   extent Plaintiff seeks tort damages for those alleged injuries, the Court agrees with Defendant that

---

[9] Plaintiff's filings before this Court contain a number of allegations about his medical issues, outstanding bills, and other equities against recovery of benefits. *See, e.g.*, ECF 49; ECF 55; ECF 66; ECF 72; ECF 74. Because eligibility for waiver requires a conjunctive analysis of whether the claimant was without fault *and* whether recovery would be against the purpose of the Act, Plaintiff's equities are only considered if he is determined to be without fault in incurring the overpaid benefits. Because the Court affirms the ALJ's determination that Plaintiff was at fault in causing the overpayments, the Court cannot consider Plaintiff's other equitable arguments against recovery.

*Schweiker v. Chilicky*, 487 U.S. 412 (1988), forecloses such damages. *See* Def.'s Mot. 8; *see also* 42 U.S.C. § 405(g), (h). Plaintiff's request for compensatory money damages is accordingly DENIED.

Finally, Plaintiff on July 28, 2014 sought a preliminary injunction against the SSA's recovery of overpaid benefits through the Treasury Offset Program and through wage garnishment. ECF 48. This Court sought a response from Defendant on August 15, 2014, ordering Defendant to address the SSA's authority to recover overpaid funds through garnishment of wages and of income tax returns, the amount that had been recovered to date, and why this Court should not enjoin further recovery pending the outcome of this appeal. ECF 54. Defendant promptly filed a response on August 29, 2014 citing appropriate statutory and regulatory authority for its recovery efforts and indicating that as of the date of filing, Plaintiff owed $51,063.80. *See* Def.'s Resp. to Court's Order, ECF 59. In subsequent filings, Plaintiff appears to believe that this Court had entered an injunction against the SSA. Plaintiff also indicated that he believes the SSA illegally began intercepting federal income tax refunds before his appeal became "final" on May 16, 2013, when the Appeals Council denied review of the ALJ's ruling. *See, e.g.*, ECF 60; ECF 62 ¶ 40; ECF 66; ECF 68; ECF 74 ¶ 19; ECF 78 ¶ 11.

Plaintiff is mistaken. This Court only ordered that Defendant provide briefing on Plaintiff's request for a preliminary injunction. *See* ECF 54. Defendant's response to the Court's order furthermore undercuts Plaintiff's assertion that the SSA's recovery efforts were premature, as the applicable regulation indicates that recovery begins upon the Commissioner's denial of a waiver, "even if the individual appeals." 20 C.F.R. § 404.506(g); Def.'s Resp. at 2. In any event, even if the SSA had been wrong in beginning recovery before the Appeals Council denied review, such error is mooted by this Court's affirmance of the ALJ. *See Hong Jun Xun v. Colvin*, No. C-13-2041-YGR, 2014 WL 1477532, at *11 (N.D. Cal. Apr. 15, 2014) (SSA's allegedly wrongful withholding of benefits following overpayment determination mooted by court's affirmance of ALJ's determination of overpayment). Because the Court now affirms the ALJ's determination that Plaintiff was overpaid benefits and not eligible for a waiver of recovery, Plaintiff's request for a preliminary injunction against recovery is DENIED as moot.

**IV.    ORDER**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and the ruling of the ALJ is AFFIRMED.

Dated: October 27, 2014

BETH LABSON FREEMAN
United States District Judge